**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GUERNSEY–MUSKINGUM ELECTRIC CO-OPERATIVE, INC., Respondent.**

**No. 14152.**

United States Court of Appeals
Sixth Circuit.

Dec. 13, 1960.

9

Hans J. Lehmann, National Labor Re-
lations Board, Washington, D. C., Stuart.

Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Melvin Pollack and Hans J. Lehmann, Attorneys, National Labor Relations Board, Washington, D. C., on brief, for petitioner.

David A. Johnston, Jr., George, Greek, King & McMahon, Columbus, Ohio, for respondent.

Before McALLISTER, Chief Judge, and CECIL and O'SULLIVAN, Circuit Judges.

CECIL, Circuit Judge.

In this case the National Labor Relations Board, hereinafter called the Board, petitions the Court for enforcement of its order of August 20, 1959, issued against respondent, Guernsey-Muskingum Electric Cooperative, Inc.

The respondent, sometimes referred to herein as the company, is and was, at all times material to this appeal, an Ohio corporation with its principal office at New Concord, Ohio. It is engaged in the production, sale and distribution of electrical energy and in the year 1958 its gross volume of business was in excess of $250,000. During the same year, its gross business was less than $3,000,-000. The respondent company was admittedly engaged in commerce within the meaning of the Labor Management Relations Act, 1947. The Board found the respondent guilty of unfair labor practices within the meaning of Section 158(a) (1) and (3) of this Act, 29 U.S. C.A. § 158(a) (1, 3).

It is claimed by the respondent that the Board had no jurisdiction over it at the time the alleged unfair labor practice occurred. James Richard (Dick) Boyer was discharged by the company on June 18, 1958 and on June 23rd he filed an unfair labor practice charge against it.

In 1954 the Board observed, "It has been the consistent position of the Board that it better effectuates the purposes of the Act, and promotes the prompt handling of major cases, not to exercise its jurisdiction to the fullest extent possible under the authority delegated to it by Congress, but to limit that exercise to enterprises whose operations have, or at which labor disputes would have a pronounced impact upon the flow of interstate commerce." Greenwich Gas Co. and Fuels, Inc., 110 N.L.R.B. 564.

In keeping with this position, it announced, "We have determined that in future cases the Board will assert jurisdiction over local public utility and transit systems affecting commerce whose gross value of business is $3,000,000 or more per annum." Greenwich Gas Co. and Fuels, Inc. cited above, p. 565. It is interesting to note that the Board made an affirmative statement and did not say that it would not assert jurisdiction over systems whose gross business was less than $3,000,000.

In Sioux Valley Empire Electric Association, 122 N.L.R.B. 92, under date of November 14, 1958, the Board revised its policy and stated that it would assert jurisdiction over all public utilities which did an annual gross volume of business of at least $250,000.

As recognized by the Board, at all times pertinent to the issues in this case, it had the statutory power " * * * to prevent any person from engaging in any unfair labor practice (listed in Section 158 of this title) affecting commerce." Section 160(a) Title 29 U.S.C.A. "Whether to assert jurisdiction in a given case is a matter within the Board's discretion and the Board's decision may be over turned by a court only when that discretion has been abused." N. L. R. B. v. Pease Oil Co., 2 Cir., 279 F.2d 135, 138.

The Administrative Procedure Act provides for judicial review of agency action. Section 1009(e) Title 5 U.S.C. A., reads in part, "It shall * * * (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; * * * ".

Our inquiry is directed to the question of whether the Board abused its discretion in asserting jurisdiction over the charge in this case.

■■ Section 158, Title 29 U.S.C.A. defines unfair labor practices. A given act described in the statute as an unfair labor practice is no less a violation of the statute simply because the Board has announced that it is unable to assert jurisdiction over it at the time. A prohibitory law does not become effective only when there is danger of a violator being caught. No new unfair labor practice was created here and given retroactive effect against the respondent. If the act charged against the company was an unfair labor practice at the time of the Board's hearing it was equally so at the time it was committed. The policy of the Board not to assert jurisdiction over a given situation at a given time does not license a company that comes within the purview of the Act to commit unfair labor practices at will. The manager of the company knew of the provisions of the Act but seemingly took refuge in the then present policy of the Board not to enforce it. There is evidence that the manager said: "For you fellows' information, I will tell you, the N.L.R.B. will do nothing for you." The policy of the Board was not made for the benefit of small companies but rather for the public at large. The Board was not divested of its power to prevent unfair labor practices. Only if it creates an inequitable situation by its change of policy can its right and duty to enforce the law be curbed by the court.

■ The substance of the charge and the Board's finding, which we will discuss later, is that the company fired Dick Boyer because he acted in concert with other employees to voice a complaint about working conditions. If the company, through its manager in fact committed this alleged unfair labor practice, it was not innocently done. One who knowingly violates a law cannot complain of inequities.

Two cases seemingly in conflict, in which the Board applied a changed standard retroactively, are N. L. R. B. v. Guy F. Atkinson Co., 9 Cir., 195 F.2d 141, and N. L. R. B. v. Pease Oil Co., supra. In the first it was held that the Board abused its discretion and in the second it was held that it did not. These opinions are not in conflict. Each case must rest on its own facts and on this basis the conclusion in each case can be reconciled.

■ There is no exact measure of what constitutes abuse of discretion. It is more than the substitution of the judgment of one tribunal for that of another. Judicial discretion is governed by the situation and circumstances affecting each individual case. "Even where an appellate court has power to review the exercise of such discretion, the inquiry is confined to whether such situation and circumstances clearly show an abuse of discretion, that is, arbitrary action not justifiable in view of such situation and circumstances." Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 95 F.2d 414, 417.

■ We find no abuse of discretion on the part of the Board in retroactively applying its changed standard to the respondent company. Accordingly, jurisdiction was properly exercised over the complaint in this case.

Having determined that the Board had jurisdiction over the company we turn to a consideration of the alleged unfair labor practice charged against the respondent. The question presented is whether Dick Boyer was discharged for cause, insubordination, or because he complained to management about working conditions.

Each summer the company conducts a program of spraying underneath its eighteen hundred miles of electric power lines in order to destroy the undergrowth. In 1958 it began this spraying on June 2nd, and as was its custom used its two three-man right-of-way crews to do the work. At this time Sam Miller, the regular foreman over these two crews

was ill and had been away from work for about ten weeks. Because of the uncertainty of his return Larry Miller was employed as a foreman to conduct the spraying project. He was a school teacher and had had no previous experience in the work. Larry was the son-in-law of Frank Carruthers, the operations manager of the company, and this did not add to his popularity with the men of the crews.

There is testimony that the announcement of the employment of Larry Miller as foreman was made by Frank Carruthers in these words: "Now, Larry don't know a damn thing about it, but he is going to be your foreman." The men resented Larry's employment because they thought he did not understand the work and that one of their number should have been advanced to the position of foreman. They complained too that his employment as foreman created hardships for them in their work because he had never been over the lines and he didn't know how to get into a place and where to place the truck so as to make it easier for the men.

The men discussed this situation among themselves and one of the crews, consisting of Charles H. Vessels, Harry Boyer and his son, Dick Boyer, became quite vocal about it. As they talked about the matter at various times and places, resentment apparently grew and finally each of the members of this crew went separately to see Foster Scott, one of the trustees of respondent.

Harry Boyer went first to see Mr. Scott and he talked about an hourly raise in pay, which he thought he was supposed to have and also about the employment of Larry Miller. A day or so later Vessels went and he talked about some sick leave and the employment of Larry Miller. About the same time Dick called on Mr. Scott and talked only about the employment of Larry Miller as foreman. It appears that the purpose of these complaints was to have Larry Miller removed as a foreman and classified as a laborer on a level with the other workmen.

The Board found that these employees were engaged "in other concerted activities for the purpose of * * * other mutual aid or protection," Section 157, Title 29 U.S.C.A. The mere fact that the men did not formally choose a spokesman or that they did not go together to see Mr. Scott does not negative concert of action. It is sufficient to constitute concert of action if from all of the facts and circumstances in the case a reasonable inference can be drawn that the men involved considered that they had a grievance and decided, among themselves, that they would take it up with management.

Upon a review of the testimony, we conclude that there was substantial evidence to support the finding of the Board. Section 160(e) Title 29 U.S.C.A. We think too that the grievance of which the men complained was a proper subject for "concerted action" with management. In N. L. R. B. v. Phoenix Mut. Life Ins. Co., 167 F.2d 983, 6 A.L.R.2d 408, certiorari denied 335 U.S. 845, 69 S.Ct. 68, 93 L.Ed. 395, it was held to be a proper subject for concert of action where insurance salesmen protested the employment of an office cashier. The court said, 167 F.2d at page 988: "A proper construction is that the employees shall have the right to engage in concerted activities for their mutual aid or protection even though no union activity be involved, or collective bargaining be contemplated. Here Davis and Johnson and other salesmen were properly concerned with the identity and capability of the new cashier. Conceding they had no authority to appoint a new cashier or even recommend anyone for the appointment, they had a legitimate interest in acting concertedly in making known their views to management without being discharged for that interest."

This is a close parallel to the case at bar. See also: N. L. R. B. v. Schwartz, 5 Cir., 146 F.2d 773; Carter Carburetor Corporation v. N. L. R. B., 8 Cir., 140 F.2d 714; Modern Motors, Inc. v. N. L. R. B., 8 Cir., 198 F.2d 925.

In Joanna Cotton Mills Co. v. N. L. R. B., 4 Cir., 176 F.2d 749, it was held that the purpose was not mutual aid or protection but that it was prompted by personal animosity on the part of one employee. The Board's order was set aside.

In Cleaver-Brooks Mfg. Corp. v. N. L. R. B., 7 Cir., 264 F.2d 637, certiorari denied 361 U.S. 817, 80 S.Ct. 58, 4 L.Ed. 2d 63, it was held that activities in protest over appointment of a foreman did not constitute concerted activity for the reason that the Act does not protect activities during working hours which disturb the efficient operation of the employer's business. These two cases are distinguishable from the case at bar.

Finally, it is claimed that Dick Boyer was discharged for cause and not for the reason that he was engaged in concerted activity for mutual aid or protection.

On June 13th, Mr. Scott called Lyle McCormick, the general manager of the company, in to see him and told him that he had received more complaints in the last week than he had in the past ten years. Mr. McCormick immediately began investigating the record and the attitude of Dick Boyer. He called the members of the crew together and told them he was "damned unhappy" about them going to see Mr. Scott. On the morning of the 18th he came upon Dick's crew not working. The members of the crew testified that they had barely stopped the engine of the truck and had not been there over five minutes. Larry Miller said that he had instructed them to proceed with spraying at that point. Later, McCormick came back and told Dick to report at his office in the evening. When he reported that evening, McCormick told him he was discharged and gave him two checks. One was for his pay for the period ending June 15th.

The other was for the time he had worked since the end of the pay period, including vacation pay. He also showed him a third check which was for severance pay and told him if he went home and acted like a gentleman he would give him that in two weeks. There is evidence that McCormick could not or did not tell him why he was fired and said maybe he could tell him in a couple of days. It was not until several days later, when McCormick filled out a paper for unemployment compensation that he gave insubordination as the cause for discharge.

Without attempting to review all of the evidence from which a conclusion may be drawn, we are of the opinion that it is ample to support the finding of the Board that Dick Boyer was discharged because of his activity in connection with the appointment of Larry Miller as a foreman. This constitutes an unfair labor practice.

The Board found the respondent in violation of Section 8(a) (3) and (1) of the Act. (Section 158(a) (3) and (1) of Title 29 U.S.C.A.). Subdivision (3) relates to labor organizations. Admittedly no labor organization is involved in this case. There was no charge in the complaint that subdivision (3) was violated. Without a basic charge of such a violation the Board could have acquired no jurisdiction to make that finding. Even though no specific objection was made to the finding it cannot be sustained. There is *no* evidence to support it. It is of little consequence, as the violation of subdivision (1) is sufficient to support the Board's order.

The Board's petition for enforcement of its order against the respondent is allowed.