PUERTO RICO FOOD PRODUCTS CORP., Tradewinds Food, Inc., and Island Can Corp., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 79–1407.

United States Court of Appeals, First Circuit.

Argued Jan. 7, 1980.

Decided May 1, 1980.

William Lespier, Hato Rey, P. R., with whom Angel Munoz Noya and Lespier & Toro, Hato Rey, P. R., were on brief, for petitioner.

Howard E. Perlstein, Washington, D. C., with whom William A. Lubbers, General Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Allison Beck, Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Petitioners challenge the Board's conclusion that the protest of five employees over the discharge of their supervisor was protected concerted activity for which they could not be discharged lawfully.

Petitioner Puerto Rico Food Products is engaged in the business of processing and canning food products. On the morning of March 3, 1977, it fired Leocadio Perez, a supervisor in its labelling department, who had been with the company slightly less than two months.[1] After learning the news, Perez proceeded to the labelling department, told the employees he had been discharged, and said goodbye. Soon thereafter a work-stoppage occurred on line 303, one of the four lines in the labelling department.

The administrative law judge (ALJ) found as follows. Mr. Unanue, the president of Puerto Rico Food Products, called Gregoria Delgado, the operator of the labelling machine for line 303, which contained the switch to stop or start line 303, to his office. Delgado told him that the employees would not work until they received an explanation for the termination of Perez. Unanue responded that the discharge was an administrative matter and insisted that production be resumed, though he said he would provide an explanation after working

---

1. The reason for or the legality of Perez's discharge is not contested in this action. Company personnel testified that Perez was terminated for unsatisfactory performance.

hours to a small group of employees. Delgado refused to return to work, and Unanue thereupon discharged her. Unanue then proceeded to the labelling machine on line 303 and told the group of employees congregated there to return to work. They too demanded an immediate explanation why Perez had been discharged which Unanue declined to give. Four employees who refused to return to work and refused to punch out were then terminated.

Stoppage of the labelling machine, which is but part of the continuous canning process, halts production on the entire line.

While some of the discharged employees had been active in union organizational drives, none of which had been successful, the ALJ found that "management's decision to terminate [the] employees was not motivated by their union activities . . ." While recognizing that in some circumstances a work stoppage in protest over a terminated supervisor may be protected concerted activity and therefore participants cannot be discharged lawfully, the ALJ concluded this stoppage was not protected. The ALJ stated:

> "[T]he activities of Supervisor Perez . . . did [not] have a direct impact on employees own job interests. [Consequently,] . . . the employees work stoppage initiated to secure an explanation for [Perez's] discharge, while not itself violative of the Act, was *not* concerted activity . . . ." (Emphasis in original).

The Board reversed concluding, contrary to the ALJ, that Perez's termination did have a direct impact on the employees' job interest.

▮▮▮ Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, grants to employees "the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection . . . ." We have recently addressed the issue presented here—the circumstances under which an employee protest over a change in management personnel is within the protection of section 7. *Abilities and Goodwill, Inc. v. NLRB*, 612 F.2d 6 (1st Cir. 1979). While on the one hand we recognized that employees may have a legitimate concern with the composition of management personnel, especially when a "low-level foreman or supervisor who deals directly with the employees" is involved, we also acknowledged that traditionally "the interest of the employer in selecting its own management team has been . . . insulated from protected employee activity." At 8. Furthermore, we noted that the employees' interest in the identity of their supervisors has been "subject to the legitimate claim of employers to a minimum of interference" in the area of supervisory personnel changes. At 10. Consequently, we concluded, in conformity with the majority of the courts which have addressed the issue, that not all forms of employee protest over supervisory changes are per se protected. Two basic criteria must be satisfied before employee concerted action over supervisory staffing matters will be protected. First, the "employee protest over a change in supervisory personnel [must] in fact [be] a protest over the actual conditions of their employment . . . ."[2] At 9; *see, e. g., NLRB v. Okla-Inn*, 488 F.2d 498 (10th Cir. 1973) (discharged supervisor had attempted to alleviate employees' oppressive workload); *NLRB v. Guernsey-Muskingum Electric Co-op, Inc.*, 285 F.2d 8 (6th Cir. 1960) (foreman allegedly made employees' job harder because foreman was inexperienced and did not understand the work). Mere sympathy for the economic well-being of a discharged supervisor divorced from any employee employment-related concern of their own, for

---

**2.** The Board's formulation of this first criteria is slightly different, but the gist, we think, is much the same. The Board stated in its opinion:

> [T]he Board had consistently held that where facts establish that the identity and capability of the supervisor involved has a direct impact on the employees' own job interests they are legitimately concerned with his identity and thereby have a protected right to protest his termination."

Under either formulation, the basic concern is with the employees' conditions of employment, not with the supervisor's well being.

example, would not qualify. Secondly, the means of protest must be reasonable. At 9. Generally, "strikes over changes in even low level supervisory personnel are not protected." *Id.*, 9.

The Board concluded the first criterion had been met—Perez's discharge had a direct impact on the employees' job interests. Perez testified that during his employment interview he was informed that a strike had recently occurred and that he was to pay special attention to certain people in his department (including some of the employees who were subsequently discharged) and to report immediately anything out of the ordinary from these people to the production manager. He stated that the first thing he did was to win the confidence of the workers in his department. He did this by getting together with them and taking his breaks and meals with them. He gave them advice as to the manner of performing their work and told them never to talk unnecessarily about a strike movement or to distribute propaganda that was not approved by management. From this evidence the Board concluded as follows:

> "It is clear . . . that the employees—some of whom were apparently under a cloud because of their prior concerted activity and desire to unionize—would have a genuine interest in the continued employment of a supervisor who exhibited concern about their welfare as employees and counseled them on matters having a direct bearing on their employment relationship. Indeed, the employees' spontaneous reaction to the news of Perez' discharge bears this out. Many employees directly supervised by Perez abruptly and unhesitantly stopped work in order to secure an immediate explanation for his discharge. [Four of the subsequently discharged employees,] fully aware of Delgado's discharge for her effort to get an answer regarding Perez' termination, undauntingly pressed Unanue for the reason underlying the discharge of their supervisor and conditioned their return to work upon receipt of said explanation. Under these circumstances, there can be little doubt that the

employees held the reasonable belief that the loss of Perez as their supervisor, a man in whom they obviously placed much confidence, would adversely alter their work environment and, as such, have a direct impact, both real and perceived, on their job interests." (Footnote omitted.)

To conclude on the present record, as the board did, that the first criterion was satisfied is to go far in the direction of establishing a per se rule that the identity of a supervisor automatically affects the employees' working conditions. That Perez instructed the employees on the manner of performing their jobs would not appear to distinguish him from any proper supervisor. Generally where employee protests over supervisory personnel have come within the arguable purview of section 7 the supervisor has been linked with an underlying employment related concern. The supervisor has either contributed to the underlying complaint (or been the cause of it) or has sought to alleviate the pre-existing grievance. While protest may have centered on the supervisor's tenure, the problem has been deeper. *See, e. g., NLRB v. Okla-Inn, supra,* 488 F.2d 498; *Dobbs Houses, Inc. v. NLRB,* 325 F.2d 531 (5th Cir. 1963) (abusive treatment which supervisor attempted to buffer); *NLRB v. Guernsey-Muskingum Electric Co-op, Inc., supra,* 285 F.2d 8; *NLRB v. Phoenix Mutual Life Insurance Co.,* 167 F.2d 983 (7th Cir.) *cert. denied,* 335 U.S. 845, 69 S.Ct. 68, 93 L.Ed. 395 (1948) (employees' interest in having efficient cashier).

In this case the only evidence in the entire record which arguably supports the Board's finding is Perez's statement that he befriended the employees and cautioned them about visible union activity. This evidence is, we think, irrelevant. The pertinent question in this case is whether the employee protest over a change in supervisory personnel is in fact a protest over the actual conditions of their own employment. In answering this question, the focus, at least preliminarily, must be upon the employees' subjective state of mind. Thus,

the possibility that Perez occasionally cautioned the employees concerning their union activity is without force unless we first determine that the employees were protesting his discharge because, for example, they feared that they had witnessed the opening salvo in an attack upon their union activities. The mere fact that Perez was a popular supervisor is not one of the recognizable conditions of their employment.

There is, however, no direct evidence on this point at all. The only conceivable indirect evidence is the inference concerning the employees' motivation for protesting that one could arguably draw from the fact that Perez counseled them. Had Perez's assistance to the employees been more substantial, or his effect on their working conditions in general been distinct from the effect which supervisors usually have on employees, then perhaps such an inference in the absence of other evidence might be sufficient to support the Board's finding of a nexus between the protest over Perez's firing and a legitimate concern about the conditions of employment. In this case, however, Perez's assistance was at best insubstantial, and the record contains the direct testimony of the employees who protested, none of whom gave the slightest indication that Perez's assistance to their unionization efforts motivated their protest. To uphold the Board on this scant evidence would effectively eliminate the nexus criterion, a step which the Board itself purports to abjure. We therefore conclude that there is not substantial evidence to support the Board's finding of a nexus between the protest over Perez's firing and the employees' legitimate interests. As we conclude the first criterion was not met we need not address whether the means of protest were reasonable.

*The Board's motion to dismiss the portion of the petition for review challenging its representation order is granted. Enforcement of the Board's order on the unfair labor practice charge contested herein is denied and the Board's order in that respect is set aside; the Board's order is otherwise enforced.*

*So ordered.*