**ATLANTIC–PACIFIC CONSTRUCTION COMPANY, INC., d/b/a Atlantic–Pacific Management, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ATLANTIC–PACIFIC CONSTRUCTION COMPANY, INC., d/b/a Atlantic–Pacific Management, Respondent.**

Nos. 93–70915, 93–71044.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 1995.

Decided April 11, 1995.

---

Deborah D. Ditore, Gay, Hall & Ditore, Sacramento, CA, for petitioner-respondent.

Howard E. Perlstein, Deputy Asst. Gen. Counsel, N.L.R.B., Washington, DC, for respondent-petitioner.

Before: GOODWIN, CANBY, T.G. NELSON, Circuit Judges.

GOODWIN, Circuit Judge:

Atlantic–Pacific Construction Company, Inc. ("Atlantic–Pacific") petitions this court to review and set aside the decision and order of the National Labor Relations Board ("NLRB") holding that Atlantic–Pacific violated Section 8(a)(1) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1), when it fired Larry Davis for circulating a letter protesting the selection of a new manager. The NLRB cross-applied for enforcement of its order requiring, among other things, Atlantic–Pacific to reinstate Larry Davis to his former or an equivalent job. We

deny Atlantic–Pacific's petition and grant the NLRB's petition that the order be enforced in full.

I.  Law and Background

Section 7 of the Act, 29 U.S.C. § 157, guarantees employees "the right ... to engage in ... concerted activities for the purpose of collective bargaining or other mutual aid or protection." Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), prohibits employers from firing an employee for engaging in concerted activity protected by Section 7.

■ The Act protects "employee protest regarding the selection or termination of a supervisor who has an impact on employee working conditions...." *The Hoytuck Corp.*, 285 NLRB 904, n. 3 (1987). *See also NLRB v. Robertson Indus.*, 560 F.2d 396, 398 (9th Cir.1976) (protesting working conditions is protected by Section 7). However, where the purpose of concerted activity is not related to working conditions, as where personal animus motivates employee protest over the selection of a manager, the protest is not protected. *The Hoytuck Corp.*, 285 NLRB 904, n. 3; *Royal Development Co., Ltd. v. NLRB*, 703 F.2d 363, 374 (9th Cir. 1983) (concerted protected activity distinguished from an employee acting for himself and by himself); *see also Joanna Cotton Mills Co. v. NLRB*, 176 F.2d 749, 752–53 (4th Cir.1949).

■ The NLRB held that Atlantic–Pacific violated Section 8(a)(1) by firing Larry Davis in retaliation for Davis' drafting, collecting employee signatures on, and sending a letter to management protesting the promotion of a disliked co-worker, Martis Hart, to a managerial position with immediate authority over Davis and the other protesting employees. The only issue presented by this petition is whether Davis and the other subscribers to the protest letter were engaged in concerted activity protected by the Act.[1]

■ We defer to the NLRB's interpretation of the Act which it is charged to enforce,

---

1. Atlantic–Pacific also argues that it fired Davis for legitimate business reasons independent of the protest letter. However, because Atlantic–Pacific raises this issue for the first time in its reply brief, we need not address it here. *Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*, 841 F.2d 918, 924 (9th Cir.1988).

so long as its conclusions are "reasonably defensible". *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979); *NLRB v. General Truck Drivers, Local No. 315,* 20 F.3d 1017, 1021 (9th Cir.), *cert. denied,* ── U.S. ──, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994). We review the NLRB's factual findings for substantial evidence on the record only. *Id.;* 29 U.S.C. § 160(e).

## II. The Admissibility of Davis' Testimony

■ At the hearing before the administrative law judge, Davis testified regarding conversations he had with other employees leading up to the sending of the letter. The ALJ allowed the testimony, over Atlantic–Pacific's hearsay objection, for the limited purpose of showing that conversations regarding the impact Hart, as manager, would have on working conditions took place among the employees.

■ Atlantic–Pacific argues that the ALJ erred in permitting this testimony over its hearsay objection. We review evidentiary rulings for abuse of discretion and find no such abuse here. *McGonigle v. Combs,* 968 F.2d 810, 818 n. 6 (9th Cir.), *cert. dismissed,* ── U.S. ──, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992).

■ The testimony of the conversations Davis had with other employees was not offered for the truth of the matter asserted, and, therefore, is not hearsay. Fed.R.Evid. 801(c). Testimony of these conversations was not admitted to show either that Hart, as manager, would in fact change working conditions, or that the employees with whom Davis spoke actually harbored the particular concerns over working conditions which they discussed. Rather, the testimony was offered to show the context within which the parties were acting, to permit the factfinder to learn the circumstances surrounding the matter. *See Ortiz v. United States,* 318 F.2d 450, 451 (9th Cir.1963), *cert. denied,* 376 U.S.

953, 84 S.Ct. 971, 11 L.Ed.2d 972 (1964). An out of court statement may be admitted as circumstantial evidence of the declarant's state of mind and, here, the conversations surrounding the letter demonstrate the employees' intent to protest working conditions through the letter, the ultimate issue in this case. *U.S. v. Brown,* 562 F.2d 1144, 1148 (9th Cir.1977).

## III. Was the Letter Protected Activity

■ Atlantic–Pacific contends that any connection between working conditions and the letter Davis sent is a pretext, that Davis sent the letter in furtherance of a personal grudge he held against Hart. While Atlantic–Pacific's theory is plausible, considering the evidence of Davis' long-standing conflict with Hart, the NLRB's decision is supported by substantial evidence and ample precedent.

■ Whether the sending of the letter was directly related to the terms and conditions of employment is a factual question to be determined by the totality of the circumstances. *See NLRB v. Oakes Mach. Corp.,* 897 F.2d 84, 89 (2d Cir.1990). Atlantic–Pacific argues that the purpose behind the letter apparent from the text of the letter itself fails to demonstrate that the letter was related to legitimate, protected concerns.[2] This may be true, but "[s]pecificity and/or articulation are not the touchstone of . . . protected concerted activity." *Springfield Library and Museum Assoc.,* 238 NLRB 1673 (1979). The nexus between the activity and working conditions must be gleaned from the totality of the circumstances, as even wholly inarticulate activity, like walkouts or work slowdowns, may be protected activity.

The NLRB and other courts have held that the selection of supervisors, like Hart, with immediate authority over workers has a direct impact on working conditions and is a protected topic of protest. *See Abilities and Goodwill, Inc. v. NLRB,* 612 F.2d 6, 9–11

---

**2.** The operative language of the letter at issue reads:

> The employee's of Parcwood are aware of Mrs. Ashwells leaving to another property, therefore we believe we need to let you know that in the interest of a good relationship with your company an outside manager should be hired,

rather than Martis Hart. We the employee's find Ms. Hart an unreasonable and difficult person to work with and we would consider another job offer if she was to be hired on a perminant [sic] or temporary basis in the above position.

(1st Cir.1979) (listing factors to be considered when determining whether concerted action is protected); *The Hoytuck Corp.*, 285 NLRB 904 n. 3 (preparing and circulating an employee petition demanding discharge of cook and kitchen supervisor is protected); *NLRB v. Guernsey–Muskingum Elec. Co-op., Inc.*, 285 F.2d 8, 12–13 (6th Cir.1960) (hiring of inexperienced foreman affects working conditions); *NLRB v. Phoenix Mut. Life Ins. Co.*, 167 F.2d 983, 988 (7th Cir.), *cert. denied*, 335 U.S. 845, 69 S.Ct. 68, 93 L.Ed. 395 (1948) (selection of an unqualified cashier affects the working conditions of insurance salesmen). Here, the fact that the protest originated with the employees and that the supervisor at issue would deal directly with the employees supports the NLRB holding that the protest letter was directly related to working conditions. *Springfield Library and Museum Assoc.*, 238 NLRB 1673; *Abilities and Goodwill v. NLRB*, 612 F.2d at 9–11. If promoted to property manager, Hart would be the immediate supervisor of Davis and the other employees who signed the letter. Hart would direct the employees' work, hire, fire and set wages for employees with only minimal consultation with higher management, set work schedules and determine the amount of work to be performed.

Davis' testimony regarding conversations he had with other employees leading up to the sending of the letter also strongly supports the NLRB's conclusion that the letter was related to working conditions. Specifically, Davis testified that a gardener approached him to voice his concerns that Hart would require employees to clean apartments at a much faster rate. According to Davis, this gardener asked Davis to draft, circulate and send a protest letter to the company president. Davis also testified that he spoke with another gardener who expressed his fears that Hart would change his working hours. In addition, Davis testified that he had conversations with four other employees regarding the impact Hart would have on working conditions, all of whom agreed to sign a letter if one was drafted. This testimony, combined with the evidence regarding

the impact the identity of the new property manager would have on working conditions, constitutes substantial evidence on the record.

The cases cited by Atlantic–Pacific are easily distinguished. Where protest of the selection of a manager has been found to be unprotected, there has been no evidence of any relation between the employees' expressed concerns and working conditions. *Joanna Cotton Mills v. NLRB*, 176 F.2d at 753 (employee petition "was nothing more nor less than an effort on the part of Blakely [employee] to vent his spleen upon a supervisory employee whose rebuke in the performance of duty had angered him"); *Puerto Rico Food Products Corp. v. NLRB*, 619 F.2d 153, 156–57 (1st Cir.1980) (employees' stopping a food labelling line in order to get an explanation of why a popular supervisor was fired is not protected activity).

Accordingly, we deny Atlantic–Pacific's petition and grant the NLRB's cross-petition for enforcement of the order in full.