**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MEDICAL MUTUAL OF CLEVELAND, INC., Respondent.**

**No. 80–1394.**

United States Court of Appeals, Sixth Circuit.

Sept. 17, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., Bernard Levine, Director, Region 8, N. L. R. B., Cleveland, Ohio, for petitioner.

James A. Rydzel, Patricia Kablach, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for respondent.

Before KEITH and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.

### ORDER

The National Labor Relations Board (the Board) is applying to the Court under § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) to enforce its order

against Medical Mutual of Cleveland, Inc. (the Company) issued on March 13, 1980 to cease and desist from the unfair labor practices found and to reinstate an employee to her former position. Medical Mutual has filed a cross-application for review and to set aside the order. The application has been referred to a panel of this Court pursuant to Rule 9(a), Rules of the Sixth Circuit. After examination of the briefs and record, this panel agrees unanimously that oral argument is not needed. Rule 34(a), Federal Rules of Appellate Procedure.

In September, 1977, the Union began a drive to organize the Company's employees and, on July 11, 1978, filed a representation petition with the Board requesting a Board-conducted election. By June, 1978, the Company had formed a Communications Committee to combat the Union's organizational efforts among its employees. The Board found a violation of Section 8(a)(1) of the Act, in the interrogation attributed to a Company supervisor. At the beginning of a Communication Committee presentation, the supervisor informed the employees in attendance that "if there is anyone here that doesn't want to be fair and hear the other side of this, then you may leave." In response to this statement, employee Mickey Woods did leave and was subsequently confronted by a supervisor about her reason for leaving. The Board found that the remark "amounted to conduct which, . . . compels employees to make a choice or exhibit the depths of their pro or antiunion feelings . . ."

Beginning in May, 1978, Mary Olsen became an active union supporter. On February 27, 1979 she was placed on probation for low productivity. She was given thirty days to improve her performance or face termination. Olsen offered to resign rather than face the pressure of working on probation. However, Supervisors Lencses and Mendolsohn encouraged her to stay on. Mendolsohn told Olsen that there definitely was a place for her, that the matter could be worked out, and that he'd like to see some improvement in her production over the next thirty days. On March 15, Mendolsohn told her that there were indications that her productivity had increased. On March 20, Mendolsohn told her he would be away from March 21 to 27 and that Supervisor Rosul would meet with her. However, no meetings took place during that period. Olsen was discharged on March 28, two days after a complaint had issued on the charge filed March 7, 1979 and only a few hours after she had refused to postpone the hearing date.

On April 4, 1979 the General Counsel amended the complaint in the Olsen case to include allegations that Medical Mutual discharged Olsen in violation of Section 8(a)(1) and (4) of the Act. The Board adopted the Administrative Law Judge's finding that Medical Mutual violated Section 8(a)(1) of the Act by coercively interrogating Woods about her union activity. The Board also adopted the Administrative Law Judge's finding that Medical Mutual violated Section 8(a)(1) and (4) of the Act by discharging Olsen on March 28, 1979. The Board's order requires the Company to cease and desist from the unfair labor practices found and from in any other manner interfering with, restraining or coercing its employees in the exercise of their Section 7 rights. Affirmatively, the order requires the Company to offer Mary Olsen reinstatement to her former position, to make her whole for loss of earnings, and to post notices.

The standard of review in Board cases is whether the Board's decision is supported by substantial evidence on the record as a whole, including the body of evidence opposed to the Board's view. *Jim Causley Pontiac v. N. L. R. B.*, 620 F.2d 122, 213 (6th Cir. 1980). This standard of review does not allow the reviewing court to set aside the Board's choice between two conflicting views of the evidence, even though the Court might have reached a different conclusion, if the matter had been before it *de novo*. *Randall v. N. L. R. B.*, 638 F.2d 957 (6th Cir. 1981).

Upon review, the Court has examined the record, including portions of the hearing held before the Administrative Law Judge. We find substantial evidence in the record

to support the Board's findings of the unfair labor practices listed above.

Accordingly, enforcement of the Board's order of April 29, 1980 is hereby granted. Rule 9(d)3, Rules of the Sixth Circuit.