**CITY DISPOSAL SYSTEMS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 81–1406.**

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1982.

Decided July 22, 1982.

**1006**

Theodore R. Opperwall, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Howard E. Perlstein, N. L. R. B., Washington, D. C., Harris Berman, Compli-

ance Officer N. L. R. B., Region 7, Detroit, Mich., for respondent.

Before LIVELY and JONES, Circuit Judges, and CECIL, Senior Circuit Judge.

PER CURIAM.

Petitioner seeks review and the National Labor Relations Board seeks enforcement of an order holding that City Disposal Systems, Inc. (the Company) violated Section 8(a)(1) of the National Labor Relations Act by discharging its former employee, James Brown, in disregard of his Section 7 rights.[1]

The Board's order relied upon the *Interboro* doctrine,[2] although it noted that this Circuit has rejected the doctrine. *City Disposal Systems, Inc.*, 256 N.L.R.B. No. 73 (June 9, 1981). We grant the petition for review and deny enforcement.

City Disposal Systems hauls garbage for the City of Detroit from a drop-off point to a land fill some 37 miles away. The garbage is hauled by tractor-trailers. Normally a driver is assigned to a certain tractor-trailer; however, when this vehicle is in for repairs, the driver may be reassigned to another vehicle.

James Brown was a driver for the Company. He normally drove truck number 245. On May 12, 1979, Brown had a near accident with truck number 244 driven by Frank Hamilton when the brakes on 244 would not stop the truck at the land fill. Hamilton took 244 back to the drop-off point. With Brown present, mechanics told Hamilton that the truck would be fixed over the weekend or the first thing Monday morning. Brown's truck, 245, also had a problem with its fifth wheel which was to be fixed by Sunday.

Brown returned to work at 4:00 a. m. Monday, May 14. He took his truck out to the land fill and found that the fifth wheel

---

1. Section 8(a)(1) provides:
   It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7].
   Section 7 provides in part:

   Employees shall have the right ... to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection....
   29 U.S.C. §§ 157 & 158 (1976).

2. *See Interboro Contractors, Inc.*, 157 NLRB 1295 (1966), enf'd, 388 F.2d 495 (2d Cir. 1967).

continued to cause problems. Brown returned to the drop-off point, talked to the mechanics, and learned that his truck could not be fixed that day. He then spoke to a supervisor, Jasmund, who told him to punch out and go home after confirming that his truck would not be fixed. Brown punched out but remained in the driver's room. Jasmund returned and requested Brown to drive number 244. Brown said he would not do so since 244 had a brake problem. Jasmund instructed Brown to go home and the two had words. Another supervisor, Bob Madary, came on the scene. When Brown repeated that 244 had problems, Madary pointed out that all the trucks had problems and if the Company dealt with them all it would be unable to move the garbage. Brown testified that he replied, "Bob, what you going to do, put the garbage ahead of the safety of the men?" Madary was unmoved. Brown left work. Later he was notified that the Company had listed his as a voluntary quit.

Subsequently Brown, a member of Local 247, International Brotherhood of Teamsters, Changers, Warehousemen and Helpers (the Union), filed a grievance seeking reinstatement and citing provisions in the collective bargaining agreement giving employees the right to refuse to operate unsafe equipment. The Union found no merit in his grievance and refused to process the grievance beyond the early stages of the contractual grievance procedure.

The *Interboro* doctrine, as we understand it, holds that an individual enforcing rights under the labor contract is engaged in concerted activity protected by Section 7 even though he is acting solely for his own purposes since the labor contract itself is the product of concerted activity and the action of the employee is an extension of that process. *Aro, Inc. v. NLRB,* 596 F.2d 713, 716 (6th Cir. 1979); *See NLRB v. Selwyn Shoe Mfg. Corp.,* 428 F.2d 217, 221 (8th Cir. 1970); *Interboro Contractors, Inc.,* 157 N.L.R.B. 1295 (1966), enf'd, 388 F.2d 495 (2d Cir. 1967).

■ Courts have recognized tension between the *Interboro* doctrine and the plain language of Section 7. *See, e.g., Kohls v. NLRB,* 629 F.2d 173, 177 (D.C.Cir.1980), cert. denied, 450 U.S. 931, 101 S.Ct. 1390, 67 L.Ed.2d 363 (1981); *NLRB v. Northern Metals Co.,* 440 F.2d 881, 884 (3rd, Cir. 1971). Section 7 requires that the employee engage in "concerted activities." An individual does not act in concert with himself. To test whether an action is concerted, we adhere to the criteria set forth by Judge Phillips in *Aro, Inc.*:

> For an individual claim or complaint to amount to concerted action under the Act it must not have been made solely on behalf of an individual employee, but it must be made on behalf of other employees or at least be made with the object of inducing or preparing for group action and have some arguable basis in the collective bargaining agreement.

596 F.2d at 718; *see NLRB v. Lloyd A. Fry Roofing Co.,* 651 F.2d 442, 445 (6th Cir. 1981).

■ There is no evidence in the record that Brown acted or asserted an interest on behalf of anyone other than himself. Brown did not attempt to warn other employees not to drive the truck he believed to be unsafe, even though the evidence established that there was a bulletin board on which employees informed their co-workers of problems with equipment. Likewise, Brown did not go to his union representative in an effort to avoid driving the truck he considered unsafe. While Brown's isolated comment alluded to the safety of all the men, it was not relied on by the Board to evidence concerted action. In view of the vague and general nature of the comment, and the absence of evidence that Brown informed other drivers or his union that number 244 was unsafe, we do not accept the comment as substantial evidence of concertedness. *Compare NLRB v. Lloyd A. Fry Roofing Co., supra,* and *NLRB v. Guernsey-Muskingum Electric Co-operative, Inc.,* 285 F.2d 8 (6th Cir. 1960) *with Bay-Wood Industries, Inc. v. NLRB,* 666 F.2d 1011 (6th Cir. 1981); *United Parcel Services v. NLRB,* 654 F.2d 12 (6th Cir. 1981) and *Aro, Inc. v. NLRB, supra.*

The Union made no effort to protest the use of the truck. Pursuit of Brown's claim

that he was discharged in violation of the labor agreement by the Union is to be distinguished from union activities with respect to the equipment Brown believed to be unsafe. The discharge claim asserts a different interest at a later time. It neither tends to prove nor disprove that when Brown complained he was seeking to represent the Union or other individual employees.

The District of Columbia Circuit relied upon similar facts to those present here in finding that an employee's actions could not reasonably be perceived as concerted in *Kohls v. NLRB,* 629 F.2d at 177. We are in complete agreement with the analysis therein expressed by Judge Edwards as to this issue.

Having found no substantial evidence that the employee's actions were concerted within the meaning of Section 7, we need not address the other arguments raised by the Company.

Accordingly, the Company's petition for review is Granted and the Board's cross-petition for enforcement is Denied.