**McLEAN TRUCKING COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 80–1710.

United States Court of Appeals,
Sixth Circuit.

Sept. 17, 1982.

---

T. Merritt Bumpass, Jr., Thompson, Hine & Flory, Richard Van M. Krotseng, Michael Frantz, Cleveland, Ohio, Wayne H. Foushee, Winston-Salem, N. C., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., Daniel Pollitt, Washington, D. C., for respondent.

Before LIVELY and KRUPANSKY, Circuit Judges, and BROWN, Senior Circuit Judge.

## ORDER

This case is before the Court upon the petition of McLean Trucking Co. (McLean) to review and modify an NLRB order issued against McLean on September 30, 1980. The NLRB has cross-applied for enforcement of the order.

David Usry, a driver employed by McLean for seven years, was discharged on February 27, 1979 after initiating several complaints regarding the safety of a tractor-trailer he was assigned to drive. Subsequent to Usry's termination, Max Ray, also a driver employed by McLean, was assigned the same unit. With Union support, Ray refused to drive the vehicle and was also discharged. In May 1979 McLean reinstated the drivers, without back pay, by converting the discharge to suspension and written warnings.

The record reveals that in June 1979 Usry filed a charge with the NLRB against McLean wherein he asserted that the company "interfered with, restrained and coerced employees in the exercise" of rights protected under section 7 of the National Labor Relations Act (Act), 29 U.S.C. § 157, thereby violating section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1).[1] [*Appendix* p. 2].

The record further discloses that in July 1979 Ray also instituted an action before the NLRB. Ray charged that, "in order to discourage its employees from engaging in protected concerted activities ... for purposes of mutual aid and protection," the company discharged Ray thereby violating section 8(a)(1) and (3) of the Act, 29 U.S.C. § 158(a)(1), (3).[2]

The charges made by Ray and Usry were consolidated for the hearing before an Administrative Law Judge held on January 30, 1980.[3] Pursuant to the hearing, at which testimony and evidence were received, the ALJ, on July 31, 1980, issued an eighteen page decision in which he made detailed findings of fact and conclusions of law. The ALJ found *inter alia* that McLean's discipline of the two drivers violated their rights under section 7 of the National Labor

Relations Act, 29 U.S.C. § 157. The company was ordered to reimburse the men for wages lost during their suspensions and to post the applicable notices.

The ALJ's decision became the final order of the Board on September 30, 1980, when, after consideration of the record and the briefs of the parties, the Board affirmed and adopted the rulings, findings, conclusions, and Order of the ALJ. Pursuant to 29 U.S.C. 160(f), McLean has petitioned this Court directly from the Board's decision.

Because we find substantial evidence in the record considered as a whole which supports the Board's finding that the employees were disciplined for engaging in protected and concerted activity, we herein grant the Board's cross-application for enforcement of the Order and deny petitioner's prayer for relief.

Although the incidents creating this dispute occurred in Georgia, jurisdiction for review upon the motion of petitioner is proper pursuant to 29 U.S.C. section 160(f) because McLean transacts business in this Circuit. Section 160(f) states in relevant part: "Any person aggrieved by a final order of the Board ... may obtain a review of such order in any United States court of appeals in the circuit ... wherein such person resides or transacts business." Jurisdiction for enforcement of the Order at the Board's motion is proper pursuant to 29 U.S.C. § 160(e).

The issue joined in this proceeding is the existence, on the record taken as a whole, of substantial evidence supportive of the Board's finding that Usry and Ray engaged in protected and concerted activity within the meaning of the Act.

1. Section 7 of the Act provides that "employees shall have the right ... to engage in ... concerted activities for the purpose of collective bargaining or other mutual aid or protection." Section 8(a)(1) of the Act makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees" engaged in activity protected by section 7.

2. Section 8(a)(3) of the Act forbids employer actions which tend to discourage union activi-

ty. Discipline of an employee for engaging in concerted or union activity is an unfair labor practice under the Act. 29 U.S.C. 158(a). *N. L. R. B. v. Washington Aluminum Co.,* 370 U.S. 9, 14–17, 82 S.Ct. 1099, 1102–04, 8 L.Ed.2d 298 (1962).

3. The N.L.R.B. assigned Usry's case number 10–CA–14770; Ray's charge was numbered 10–CA–14813.

The judicial review provision of the Labor-Management Relations Act, § 10(e), 29 U.S.C. § 160(e), is explicit:

[T]he court . . . shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying . . . or setting aside in whole or in part the order of the Board.

No objection that has not been urged before the Board . . . shall be considered by the court . . . The findings of the Board with respect to questions of fact if supported by substantial evidence on the record as a whole shall be conclusive.

■■ Thus, the Court may not review the record *de novo* and must uphold the Board if the record as a whole contains evidence which is adequate in a reasonable mind to support the decision. *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 487–91, 71 S.Ct. 456, 463–66, 95 L.Ed. 456 (1951); *Jim Causley Pontiac v. N. L. R. B.*, 620 F.2d 122 (6th Cir. 1980). Applying this standard the court may consider the body of evidence opposed to the Board's conclusion, but the court may not "set aside the Board's choice between two conflicting views of the evidence if it is supported by substantial evidence, even though the court might have reached a different conclusion if the matter had been before it *de novo*." *Jim Causley Pontiac v. N. L. R. B.*, 620 F.2d at 123.

This Circuit has defined a concerted activity protected under the Act by stating that "it must not have been made solely on behalf of an individual employee, but it must be made on behalf of other employees or at least be made with the object of inducing or preparing for group action and have some arguable basis in the collective bargaining agreement." *Aro, Inc. v. N. L. R. B.*, 596 F.2d 713 (6th Cir. 1979). *City Disposal Systems, Inc. v. N. L. R. B.*, 683 F.2d 1005 (6th Cir. 1982) (per curiam).

In *City Disposal Systems, Inc. v. N. L. R. B.*, this Court has reaffirmed its rejection of the so-called *Interboro* doctrine. In *Interboro Contractors, Inc.*, 157 N.L.R.B. 1295 (1966), *enf'd*, 388 F.2d 495 (2d Cir. 1967), the Board held that complaints by an individual employee tending to enforce provisions of a collective bargaining agreement amounted to concerted activity under section 7 of the Act, regardless of co-worker interest in curing the asserted violations. This Court's refusal to apply the *Interboro* doctrine is premised upon the conclusion that the doctrine transforms an entirely individual and personal protest into a protectable concerted activity, *Aro, Inc. v. N. L. R. B.*, *supra* at 717, thereby extending section 7 protections beyond the boundaries envisioned and intended by Congress. Accordingly courts have held that the *Interboro* doctrine conflicts with the plain language of the Act. *City Disposal Systems v. N. L. R. B.*, *supra*, at 1007; *Kohls v. N. L. R. B.*, 629 F.2d 173, 177 (D.C.Cir.1980), *cert. denied*, 450 U.S. 931, 101 S.Ct. 1390, 67 L.Ed.2d 363 (1981).

■ While an "individual does not act in concert with himself," *City Disposal*, *supra*, he may nevertheless, acting alone, engage in activity protectable under the Act. Section 7 of the Act is designed to protect union activity "in both its nascent and mature forms." *Bay-Wood Industries, Inc. v. N. L. R. B.*, 666 F.2d 1011, 1012 (6th Cir. 1981) (per curiam). Organized and protected complaints will often develop from the dissatisfaction of an individual employee; the employee's initial protestations do not forfeit protection under the Act merely because they precede union involvement or concerted activity. If the employee actually proceeds on behalf of other employees, or at least with the intent to induce group action, in the presentation of work-related grievances arguably based within the collective bargaining agreement, then the activity is protected by the Act. *See City Disposal, supra*; *Timet v. N. L. R. B.*, 671 F.2d 973 at 974 (6th Cir. 1982); *Bay-Wood Industries, Inc. v. N. L. R. B.*, *supra*, 666 F.2d at 1012; *United Parcel Services v. N. L. R. B.*, 654 F.2d 12 (6th Cir. 1981); *N. L. R. B. v. Lloyd A. Fry Roofing Co., Inc. of Delaware*, 651 F.2d 442 (6th Cir. 1981); *Aro, supra*, 596 F.2d at 717; *N. L. R. B. v. Guernsey-Muskingum Electric Co-op, Inc.*, 285 F.2d 8, 12 (6th Cir. 1960).

This Court recognizes the statutory obligation to separate the unprotected activity of an individual operating in his own interests, from the protected activity of the individual, acting alone, but advancing the interests of the group. Heretofore this Circuit has elected not to enunciate clear and detailed guidelines universally applicable to the issue. The preferred approach has been to resolve each case in light of its unique factual setting. However, upon examination of recent Sixth Circuit decisions, common factors may be discerned and articulated which impact upon the instant analysis, *Bay-Wood Industries, supra,* provides an overview of these elements. Therein this Court, in a *per curiam,* opinion considered the evidence pursuant to the definition of concerted activity proffered by *Aro.* (reprinted *supra* at 608.) At 1012, we stated:

> The uncontroverted evidence shows that [the employee] *acted alone* on his own behalf. *He did not file a grievance* concerning this matter as provided for in the collective bargaining agreement . . . , *nor did he notify the union steward* of the problem. Furthermore he testified that when he complained, *he was not attempting to enforce the safety provisions of the Union's contract* . . . . Instead he stated that he was seeking solely to resolve a problem which he believed concerned him alone. *He enlisted no other employees* in this dispute nor did he attempt to represent any interests other than his own. [Emphasis supplied].

▉ Thus, in evaluating the nature of the individual action, this Court finds the following factors are relevant to the issue of concertedness: (1) the substance of the employee's activity—did he act alone, without union advice or did he seek to involve and inform other employees; (2) the degree of union involvement in and concern with the dispute—was a grievance filed, were union officials notified; (3) the subject of the complaint—did it have at least an arguable basis in the collective bargaining agreement or was it merely a personal dispute.

▉ On February 27, 1979, Usry was assigned to drive tractor-trailer unit 26144. Prior to departing the terminal, he tested the truck and discovered that it had a steering defect. Usry reported the condition and remanded the vehicle to company mechanics for testing and repair. The truck was thereafter re-released to Usry. Usry commenced his assignment but noticed that the wheel still pulled to the right. Upon reaching the highway and a speed of 55 miles per hour, Usry testified and the ALJ upon substantial evidence found, "that the tractor pulled so hard to the right that he had serious difficulty controlling the vehicle and keeping it on the road." *Appendix* at 229. Usry stopped the unit 17 miles from the terminal and called for a mechanic to inspect the truck.

In an unusual response, three management representatives accompanied the mechanic dispatched to the scene. The mechanic, the ALJ found, "tested the vehicle during rush hour in 'very heavy traffic, bumper to bumper,' hardly a fair simulation of the road conditions faced by Usry at 55 miles per hour." *App'x* at 231. Usry objected to the mechanic's conclusion that the vehicle was safe and stated that he wanted to contact the appropriate union official for instruction on how to proceed before he would drive the vehicle. *App'x* at 33. Usry was attempting to reach the union when Relay Manager Tom Pickel interrupted him and ordered him to continue on his assigned run. *App'x* at 33.

Usry reluctantly complied while Pickel and the others returned to the terminal. The steering difficulties persisted however and Usry again left the highway. He thereupon contacted union representative Wayne Sheppard and reported the situation; Sheppard instructed him to phone the terminal and request another mechanic. *App'x* at 34–35.

Pickel received Usry's second phone call to the terminal. At Pickel's insistance a union representative was summoned to witness the conversation which ensued. *App'x* at 37. Usry reiterated to Pickel and the union representative his concern of a defect

which rendered the vehicle unsafe for operation. Pickel then instructed Usry to "go home."

Thereafter, Pickel, a mechanic, and another union driver traveled to Usry's location. Usry had remained with the vehicle, insisting that he was not abandoning his assignment. Usry stated that he wanted a union member—the driver accompanying Pickel—to witness their conversation. Pickel assented; Usry was commanded to remove his belongings from the truck because he was no longer employed by McLean. *App'x* at 39–40, 62. Thereafter, and also in Pickel's presence, Usry gave the substitute driver the home phone number of the union official whom Usry had earlier spoken with. *App'x* at 41. The driver was already aware of the Union's involvement in the complaint and Usry explained the details more fully to the driver.

In refusing to drive the truck, Usry did not act unilaterally but pursuant to directions from his union. Unlike the situation in *Bay-Wood, supra,* Usry's first thought here was to contact a union official for instructions. Usry, also unlike the employee in *Bay-Wood,* sought to involve other union members and inform them of the dispute. His success in this endeavor is documented by the record. For example, the mechanic who accompanied Pickel on the second complaint was aware of the situation and prior to taking any action, the mechanic conferred with Wayne Sheppard, the union official with whom Usry had discussed the matter. At the hearing before the ALJ, the mechanic testified on cross examination as follows:

Q. Okay, Why did you call Mr. Sheppard? What did he have to do with it?

A. He is the Union representative.

Q. And why did you call him?

A. To see what my standards was on because he told me in the shop that I think it was three mechanics that checked it out altogether.

*App'x* at 82–83.

Substantial evidence exists on the record considered as a whole which supports the ALJ's determination that Usry's activity was protected by the Act.

The next day, February 28, 1979, the truck was assigned to Max Ray. Ray was preparing to leave the terminal when he was approached by three drivers—two of whom were union stewards—who related the previous day's events to Ray. Pickel approached the group and attempted to take Ray aside. He was unsuccessful. Pursuant to his discussions with the union representatives, Ray informed Pickel that he would drive the truck if Pickel could produce the documentation (required by the collective bargaining agreement) that it had been repaired and was safe to operate. Ray testified that he was acting with Union support in refusing to drive the truck without assurances that it was safe. *App'x* at 95–96.

Thus, both Ray and Usry acted pursuant to union instructions, in concerted activity founded upon the collective bargaining agreement then existing.

The Company also contends that it was not aware that the drivers were engaged in concerted activity, and that therefore it is not in violation of the Act. The Company is correct insofar as this Circuit has held that it is the employer's knowledge of an employee's concerted activity and subsequent discipline which constitutes a violation of the Act. *Jim Causley Pontiac, Division Jim Causley, Inc. v. N. L. R. B.,* 675 F.2d 125 (6th Cir. 1982). However here it is clear that the company knew that Usry and Ray made their complaints pursuant to union activity. Usry did not refuse to operate the vehicle without first contacting the appropriate union officer. Pickel was present when Usry discussed the truck's condition with other union members; Pickel also prevented Usry from contacting union officers. Ray's complaint was made pursuant to a discussion with union shop stewards during which Pickel was present. The Company's claim as to this issue is therefore without merit.

Finally, the company argues that even if Usry and Ray were engaged in concerted activity,[4] such activity was not protected because it was in violation of the collective bargaining agreement. The applicable provision of the bargaining agreement is Article 16 which relevantly states:

The Employer shall not require employees to take out ... any vehicle that is not in safe operating condition ...

It shall not be a violation of this Agreement where employees refuse to operate such equipment unless such refusal is unjustified.

The company essentially argues that Usry and Ray violated Article 16 of the collective bargaining agreement and were therefore not protected from retributive acts by management. The company strenuously contends that the ALJ ignored the plain language of the Article. McLean asserts that under Article 16 drivers are justified in refusing to operate a vehicle only when the vehicle is *in fact* unsafe as determined by a mechanic. However, the collective bargaining agreement does not so provide. Article 16 requires drivers to operate any assigned vehicle unless they justifiably believe the unit unsafe. Drivers are not required to ascertain with definitude, as the company argues they must, that the truck is unsafe; rather, they must merely be justified in their belief.

The ALJ, on the basis of substantial evidence and the testimony which he properly chose to credit, determined that Usry's and Ray's concerns were justifiable. The Company's claim on this issue is therefore meritless.

The order of the Board should be enforced as substantial evidence supports the ALJ's choice of credible testimony, his findings of fact, and his determination that Usry and Ray were disciplined for participating in concerted union activity.

LIVELY, Circuit Judge, dissenting.

I respectfully dissent. This court has repeatedly refused to apply the *Interboro* doctrine, and my view of the record in the present case is such that the order of the Board could only be enforced by applying that doctrine. I can find no evidence that either of the discharged employees ever indicated that he was acting on behalf of anyone other than himself in refusing to drive the truck. As Judge Phillips wrote for the court in *Aro, Inc. v. N. L. R. B.,* 596 F.2d 713, 718:

For an individual claim or complaint to amount to concerted action under the Act it must not have been made solely on behalf of an individual employee, but it must be made on behalf of other employees or at least be made with the object of inducing or preparing for group action and have some arguable basis in the collective bargaining agreement.

Though the refusal by the employees to drive the truck does have some arguable basis in the contract, there is absolutely no evidence that they were acting on behalf of anyone other than themselves or were laying the groundwork for collective action when they refused to drive. The fact that they consulted a union steward during the dispute with their supervisor is not proof of concerted action.

I would deny enforcement of the order.

---

4. Indeed, it would appear that the company conceded this much before the Board. The ALJ's decision stated: "The Respondent [McLean] in its brief states that 'it understands and concedes that complaining about safety problems or safety violations is a protected concerted activity.' " *App'x* at 228. The result in this case therefore appears procedurally correct pursuant to 29 U.S.C. § 160(e): "No objection that has not been urged before the Board ... shall be considered by the court."