**AJAX PAVING INDUSTRIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 82–1337, 82–1482.

United States Court of Appeals, Sixth Circuit.

Argued June 7, 1983.

Decided July 28, 1983.

William M. Saxton, Gregory S. Muzingo (argued), Butzel, Long, Gust, Klein, Van Zile, Detroit, Mich., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Fred Havard, N.L.R.B., Washington, D.C. (argued), for respondent.

Before KEITH and KENNEDY, Circuit Judges, and McRAE,* Chief District Judge.

PER CURIAM.

Ajax Paving Industries (Ajax) petitions for review of a decision of the National Labor Relations Board (Board) that Ajax committed an unfair labor practice by failing to recall its employee Lawson Dalton because of Dalton's "concerted activity" protected under 29 U.S.C. § 158(a)(1). The Board cross-petitions for enforcement. After careful review of the record we hold that the Board's findings are supported by substantial evidence. We therefore grant the cross-application for enforcement.

Ajax is a paving contractor. Lawson Dalton, the charging party in this action, worked for Ajax from 1972 to 1979. During the last three years of his employment at Ajax, Dalton served as a paver operator for one of the company's Detroit paving crews. In either late October or early November of 1980, members of Dalton's crew found that their paychecks were short by approximately $100. The crew members discussed this situation among themselves and several individuals complained to the crew foreman who promised to remedy the

---

* Honorable Robert M. McRae, United States District Court for the Western District of Tennessee, sitting by designation.

problem. Regional manager Rea was also informed of the shortfall by several individuals including Dalton. The next paycheck, however, was again short by approximately one day's pay. The crew members again discussed the shortfall among themselves. All were in apparent agreement that the matter should be taken care of as soon as possible although no common course of action was arrived at or even perhaps discussed. Subsequently, one morning before work, Dalton went to the company's main offices and sought out the payroll clerk. The clerk has stated that Dalton was abusive and demanded to be told "what the hell" was going on and when "this shit" was going to stop. Dalton denies having been in an excited state or having used profanity. The clerk told Dalton that she was aware of the crew's problem but could not do anything about it. Dalton then returned to the job site and described his activities to fellow crew members, one of whom indicated that had he known Dalton was going to complain he would have accompanied Dalton in registering the complaint. Shortly afterwards on the same day, manager Rea arrived at the job site and called the entire crew together. He severely criticized Dalton for approaching the clerk instead of allowing Rea to handle the problem. Rea also admonished the crew to use "proper channels" in the future. Dalton testified that Rea not only chastised him and the crew for lack of patience but also told Dalton to pack his bags if he was unable to follow Rea's expectations of protocol. Dalton did not apparently take this seriously and went back to work. The crew recouped the shortages in pay during the following pay period. Nothing further occurred through the end of the paving season, several weeks later.[1] In 1980, Ajax experienced a severe drop in its business. In the spring of that year the company decided to eliminate two of its four Detroit paving crews. The crew on which Dalton worked was one of those retained. Dalton, however, after being told by his foreman to take his spring work physical, was informed by Rea that paver operator Smazel would be retained in Dalton's place. Smazel, who had been an operator with Ajax longer than Dalton,[2] had previously worked in one of the crews eliminated from the Pontiac, Michigan division in 1980. Other than the replacement of Dalton with Smazel, each crew retained or eliminated was treated as a unit by Ajax in making its cutback decisions.

■ Section 8(a) of the Labor-Management Relations Act, 29 U.S.C. § 158(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce" employees in the exercise of their right to engage in "concerted activities for the purpose of . . . mutual aid or protection" as guaranteed in section 157. To establish a violation of section 8(a)(1) the Board must demonstrate that the employee was engaged in such protected concerted activity, that the employer knew of the activity and its concerted nature, and that the employee's protected activity was a motivating factor prompting some adverse action by the employer. *See Vic Tanny International, Inc. v. NLRB,* 622 F.2d 237 (6th Cir.1980); *Air Surrey Corp. v. NLRB,* 601 F.2d 256 (6th Cir.1979); *Jim Causley Pontiac v. NLRB,* 620 F.2d 122 (6th Cir.1980); *McLean Trucking Co. v. NLRB,* 689 F.2d 605 (6th Cir.1982).

■ In the present case the Board affirmed the findings of an administrative law judge (1) that employee Dalton had engaged in protected activity when he complained of paycheck shortages common to his crew; (2) that the employer Ajax knew, through its manager Rea, that the complaint was concerted; and (3) that Dalton's protected activity was a motivating factor in the company's decision not to recall Dalton for the 1980 paving season. The only issue on review of that decision and order is whether the Board's findings on these three

---

1. The paving business in Michigan is seasonal. The weather prevents paving operations during the colder months.

2. The collective bargaining agreement between Ajax and the local union has no provision requiring recall on the basis of seniority. Nor does Ajax claim to have used seniority as a basis for its decision to replace Dalton with Smazel.

elements is supported by "substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). *See generally, Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *McLean Trucking,* 689 F.2d at 608. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 340 U.S. at 477, 71 S.Ct. at 459, *quoting, Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938). In conducting its review for substantial evidence the appellate court is not to substitute its own view of the evidence for that of the Board, but it nevertheless must consider all of the evidence, both favorable and contrary to the Board's conclusions. *Universal Camera,* 340 U.S. at 488, 71 S.Ct. at 464; *McLean Trucking,* 689 F.2d at 608; *Jim Causley Pontiac,* 620 F.2d at 123. It is sufficient that the evidence presented would have created a fact issue suitable for resolution by a jury. *See McLean Trucking,* 689 F.2d at 608.

We find that the Board's finding on each of the required elements is supported by substantial evidence.

### 1. Concerted Activity

■ It is well established that the conduct of an individual employee may constitute "concerted activity" for purposes of § 8(a)(1). *See, e.g., McLean Trucking,* 689 F.2d at 608; *NLRB v. Lloyd Fry Roofing,* 651 F.2d 442, 445 (6th Cir.1981); *ARO, Inc. v. NLRB,* 596 F.2d 713, 718 (6th Cir.1979). This concept was first formulated in the Sixth Circuit in *NLRB v. Guernsey-Muskingum Electric Co-op, Inc.,* 285 F.2d 8 (6th Cir.1960). In *Guernsey,* employees became upset when a new foreman, not familiar with their job, was selected from outside of their ranks. After discussion among the men it was decided that each should complain in an effort to remove the foreman.

Three employees individually approached the management to complain of its selection of the foreman. Upholding the Board's finding that the employer's subsequent discharge of one of the complaining employees was motivated by that employee's concerted activity, the Court stated:

> The mere fact that the men did not formally choose a spokesman or that they did not go together to see [management] does not negative concert of action. It is sufficient to constitute concert of action if from all of the facts and circumstances in the case a reasonable inference can be drawn that the men involved considered that they had a grievance and decided, among themselves, that they would take it up with management.

*Id.* at 12.

In *ARO, Inc.,* the Sixth Circuit expounded on this initial formulation of when individual conduct may constitute protected concerted activity:

> For an individual claim or complaint to amount to concerted action under the Act it must not have been made solely on behalf of an individual employee, but it must be made on behalf of other employees *or at least be made with the object of inducing or preparing* for group action and have some arguable basis in the collective bargaining agreement. (emphasis supplied)

596 F.2d at 718.[3] *See McLean Trucking,* 689 F.2d at 608; *Bay-Wood Industries, Inc. v. NLRB,* 666 F.2d 1011, 1013 (6th Cir.1981) (both cases citing *ARO* with approval).

Most recently, this Court has expressed the notion that individual conduct which *precedes* concert with others may constitute a protective activity if the individual actually proceeds on behalf of others to enforce the collective bargaining agreement or intends the conduct to induce group action.

Section 7 of the Act is designed to protect union activity "in both its nascent and

---

**3.** The court in *Lloyd Fry Roofing* provided a similar rendition of the test by combining quotations from *Guernsey* and *ARO, Inc.:*

> An individual employee's complaint is 'concerted' if it is related to group action for the mutual aid or protection of other employees. Either the individual employee 'is in fact acting on behalf of, or as a representative of, other employees,' or his claim 'must be made with the object of inducing or preparing for group action.' It is not necessary that the individual employee be appointed or nominated by other employees to represent their interests. 651 F.2d at 445 (citations omitted).

mature forms." *Bay-Wood Industries, Inc. v. N.L.R.B.*, 666 F.2d 1011, 1012 (6th Cir.1981) (per curiam). Organized and protected complaints will often develop from the dissatisfaction of an individual employee; the employee's initial protestations do not forfeit protection under the Act merely because they precede union involvement or concerted activity. If the employee actually proceeds on behalf of other employees, or at least with the intent to induce group action, in the presentation of work-related grievances arguably based within the collective bargaining agreement, then the activity is protected by the Act.

*McLean Trucking*, 689 F.2d at 609.[4]

■ In the present case the evidence supporting the Board's finding that Dalton was engaging in concerted activity when he complained to management is sufficient to satisfy the substantial evidence test. It is undisputed that members of Dalton's crew engaged in group discussions about the pay shortages after each shortage was discovered as well as after Dalton's complaint. While the content of those discussions remains undisclosed by the record, the Board reasonably inferred that Dalton's actions reflected commonality of purpose meant to inure to the mutual aid and benefit of the entire crew. After discussions of a group problem Dalton drove to the company's main offices before work and registered a complaint which was common among all of the men. Indeed, Dalton testified that he

asked the payroll clerk about "my shortage of pay and if she knew why *we* hadn't received it, *or* why I hadn't received mine." After making this complaint, he returned and described his actions to his co-workers, one of whom declared that he would have liked to joined in the effort. The Board also relied upon its perception that the company itself treated Dalton's action as concerted by immediately calling the entire crew together for a meeting on the complaint. This was a reasonable inference to draw.[5]

Ajax contends that the Board's finding is actually nothing more than a covert application of *Interboro Contractors, Inc.*, 157 N.L.R.B. 1295 (1966), *enforced*, 388 F.2d 495 (2d Cir.1967), a case explicitly rejected by the Sixth Circuit in *ARO, Inc. See* 596 F.2d at 716–17. *The Interboro Contractors* doctrine allows the Board to infer the existence of concerted activity from the mere fact that an employee's individual conduct was designed to enforce rights common to all employees. In response the Board justifiably points out that it did not find the *constructive* concerted activity that *Interboro Contractors* endorses but rather *actual* concerted activity based upon reasonable inferences raised by the totality of circumstances surrounding Dalton's conduct. We agree.

2. Employer Knowledge of Concerted Activity

■ In order to find that the employer has committed an unfair labor practice by

---

4. The *McLean* court set forth three considerations "relevant to the issue of concertedness" in the case before it. These were:
   (1) the substance of the employee's activity—did he act alone, without union advice or did he seek to involve and inform other employees; (2) the degree of union involvement in and concern with the dispute—was a grievance filed, were union officials notified; (3) the subject of the complaint—did it have at least an arguable basis in the collective bargaining agreement or was it merely a personal dispute.
   *Id.* at 609. While useful in contexts such as that presented in *McLean,* these considerations are not very helpful in resolving the present issue, particularly since the local union was not involved in the dispute. The relevancy of such considerations in *McLean* does not, of course,

warrant their rigid application to other circumstances involving potential concerted activity.

5. Ajax refutes this inference by contending that it was Dalton's supposed abusive manner that prompted a meeting with the entire crew rather than any sense that his complaint was a concerted action by the employees. As did the ALJ, we have trouble understanding why the entire crew would be called together for chastising Dalton. There was no evidence that other employees had been similarly abusive to front office personnel. Dalton and other crew members testified that Rea did not admonish the crew to avoid abusive complaints. Rather, Rea lectured the crew for bypassing "channels" and complaining to the front office. The company's arguments here are unpersuasive.

taking adverse action against an employee who engages in protected concerted activity, the Board must determine that the employer knew of the concerted nature of the employee's conduct. *Air Surrey Corp. v. NLRB,* 601 F.2d 256, 257 (6th Cir.1979). The Board can, however, find the requisite knowledge by inference so long as actual knowledge is established by a preponderance of the evidence. *Jim Causley Pontiac v. NLRB,* 675 F.2d 125, 127 (6th Cir.1982).

■ In the present case there is sufficient evidence to support the Board's finding under the substantial evidence standard of review that Ajax knew that Dalton's conduct was concerted. The Board relies primarily upon three facts to support its finding. First, Ajax knew that Dalton's crew had experienced a common problem with shortages in their paychecks. Rea undisputedly knew this and the payroll clerk apparently referred to the problem as the "crew's situation." Second, after Dalton complained, Rea treated the complaint as concerted by immediately calling together the entire crew to discuss the problem rather than simply contacting Dalton singularly. Third, the apparent thrust of Rea's speech to the crew was that the *crew's problems* and its common complaints should be addressed to Rea not the front office. This again provides a reasonable inference that Rea considered Dalton's paycheck complaint to be as much that of the crew as that of Dalton alone.

On the other hand Rea testified that he gathered the entire crew together primarily because he didn't think it appropriate for individuals to go to the front office and "rant and rave."[6] More importantly, there is no direct evidence that anyone told Rea that the men had discussed their mutual problem or Dalton's visit to the front office among themselves. Yet, it is very clear that Rea knew that Dalton's complaint was directly related to a problem mutually shared by the entire crew. His subsequent actions clearly permit the inference that he believed that the complaint was concerted.

This evidence would be sufficient to submit the issue to a jury if this were a jury case. By analogy we find that it is sufficient to support the Board's finding of the requisite knowledge.

3. Employer's Motivation

■ Finally, the Board must establish that the employee's concerted activity was a motivating factor behind the employer's adverse action. It is, of course, the employer's intention to inhibit concerted activity which is most central to the prohibition of § 8(a)(1). The employee's concerted activity need not, therefore, be the only motivating factor for the employer's action. *Vic Tanny,* 622 F.2d at 241; *Jim Causley Pontiac,* 620 F.2d at 126; *Lloyd Fry Roofing,* 651 F.2d at 446. In the present case Ajax undisputedly suffered severe cutbacks in its business during the 1980 season. This economic crisis caused Ajax to eliminate a number of its paving crews, including two out of the four located in Detroit. The consequence of this business necessity, Ajax asserts, was that it had to make difficult decisions as to which of its employees would be retained. Dalton was simply not retained. In cases in which there are both legitimate and potentially illegitimate reasons for an employer's actions this Circuit has utilized the burden shifting approach of the Board established in *Wright Line, a Division of Wright Line, Inc.,* 251 N.L.R.B. 1083 (1980), *enforced,* 662 F.2d 899 (1st Cir. 1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). *E.g., Republic Die & Tool Co. v. NLRB,* 680 F.2d 463, 464, 465 (6th Cir.1982); *Lloyd Fry Roofing,* 651 F.2d at 446.[7] Under this test the general counsel has the initial burden of showing that the protected conduct was a "motivating factor" in the employer's action. After this burden has been met, the burden "shifts to the employer to prove that the same action would have taken place in the absence of the protected concerted activity." 251 N.L.R.B. at 1089. This second

**6.** *See* footnote 5, page 1218.

**7.** The Supreme Court has recently approved this approach for such "mixed motive" cases. *NLRB v. Transportation Management Corp.,* —— U.S. ——, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983).

element may essentially be stated in terms of a *but for* analysis: that is, but for the employee's concerted activity would the employee have been retained? *See Lloyd Fry Roofing,* 651 F.2d at 446.

▪ The Board in this case found that the general counsel had shown the existence of an unlawful motivating factor and that the employer's asserted justification for not retaining Dalton was a pretext. The issue on review, therefore, is whether that finding is supported by substantial evidence. *See Republic Die & Tool,* 680 F.2d at 465.

The primary support for the Board's finding that there existed an unlawful motivating factor in Ajax's decision not to recall Dalton is that while Ajax had legitimately eliminated some of its work force, it had done so only by eliminating entire crews *as whole units.* The sole exception to this practice of keeping the crews intact was the replacement of Dalton by Smazel from the company's Pontiac division. Since Dalton's crew was one of those retained by Ajax the Board could find no reason other than Dalton's concerted activity to explain why he had been singled out for replacement.

In response Ajax asserted that Dalton, while admittedly an excellent paver operator, was not as good as Smazel at maintaining the company's very expensive paving equipment. The Board found that this reason was merely pretextual. There is conflicting testimony on this issue. Rea testified that he had on several occasions "helped" Dalton clean his equipment and admonished him to do a better job. When pressed Rea admitted that Dalton was never actually reprimanded for any failings in this regard but was simply not as effective at maintaining his machine as Smazel. Rea describes how the management met, discussed the difficult choice of whether to recall Dalton as opposed to Smazel and, because of the workers' relative attention to maintenance, chose Smazel. Others, however, including Dalton, testified that they were aware of no failings on Dalton's part to keep his machine in order. Dalton states that management never once indicated that it had any problems with his performance on this score. The ALJ explic-itly credited this latter testimony in finding the company's justifications for only replacing Dalton pretextual. The Board accepted this finding in part because Ajax failed to explain why it chose to make a comparative evaluation between Smazel and Dalton while not doing so for other paver operators. The paver operator for the crew left intact in the Pontiac division was not apparently evaluated for replacement by Smazel or Dalton despite the fact that Smazel was also from that division. Under these circumstances the Board justifiably found the decision to single out only Dalton for replacement among the crews retained for the 1980 season as evidence that Ajax had actually replaced Dalton because of his concerted activity. This is particularly true in light of the apparent animus Rea exhibited towards Dalton and Dalton's complaint. *See Republic Die & Tool,* 680 F.2d at 464.

Thus, we conclude that the Board's finding of a Section 8(a)(1) violation by Ajax is supported by substantial evidence. Accordingly, the Board's petition for enforcement is granted.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

Because I find no substantial evidence that Dalton was engaged in concerted activity when he went to Ajax's main office and complained to the payroll clerk about his check, I respectfully dissent. Although there was testimony that the members of the paving crew discussed the shortages in their checks among themselves, the only evidence of what was said is found in the testimony of co-employee, Rick Mitchell, that it was "just general talk about they'd like to get that money that week if they could or at least get it straightened out . . . ." Mitchell and Nelson, the only other Ajax employees who testified, each stated that he spoke individually to his supervisor about the shortage. Dalton did not testify that his action in going to the office was on behalf of the group. He did not tell his co-employees of his intentions before acting. Rather, one morning before work, on his own initiative, he went to complain

about his check. He testified that in his conversation with the clerk, he said, "I just asked her about my shortage of pay and if she knew why we hadn't received it, or why I hadn't received mine." (App. 13). The payroll clerk testified that, "Mr. Dalton walked into the office and said that he had been short and asked me what the hell I was going to do about it ...." (App. 134a). After the fact another employee said that if he had known Dalton was going to the office, he would have gone with him. However, there is no evidence that the employer knew of this conversation. Neither this after the fact ratification, nor the fact that "[t]here is no indication that any employee disapproved of what Dalton had done," (Decision and Order of ALJ, pp. 9–10) proves that Dalton acted on behalf of the group.

There is nothing in foreman Rea's statements when he called the crew together that indicates that he believed Dalton was acting on behalf of his fellow employees. All three Ajax employees testified that Rea told the crew that complaints should come to him instead of *individual* employees going to the payroll clerk who could do nothing about the checks.

Although the Board does not acknowledge that it is doing so it appears to me that it is relying upon the doctrine of "constructive" concerted activity articulated in its decision in *Interboro Contractors, Inc.,* 157 N.L.R.B. 1295 (1966), *enforced,* 388 F.2d 495 (2d Cir.1967), and rejected by our Court in *ARO, Inc. v. NLRB,* 596 F.2d 713 (6th Cir.1979), and *Air Surrey Corp. v. NLRB,* 601 F.2d 256 (6th Cir.1979).

In the absence of substantial evidence that Dalton was engaged in protected activity and knowledge of that fact by Ajax, the Board's order should be denied enforcement.