12 F.3d 213
 145 L.R.R.M. (BNA) 2512
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner/Cross-Respondent,
v.
JAY METALS, INC., Respondent/Cross-Petitioner.
 Nos. 92-6419, 93-5019.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1993.
 
 Before: KENNEDY, MARTIN, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 The National Labor Relations Board ("the Board") brings this action to enforce its Order of August 10, 1992, holding that respondent, Jay Metals, Inc., committed unfair labor practices, in violation of sections 8(a)(1) and (3) of the National Labor Relations Act ("the Act"), 29 U.S.C. Sec. 158(a)(1) and (3). Respondent cross-petitions to set aside the Board's Order. On appeal, respondent argues that (1) there is insufficient evidence to conclude that the respondent violated section 8(a)(1) and (3) by laying off and failing to recall an employee, and (2) there is insufficient evidence to conclude that respondent made coercive statements or published an unlawful no-solicitation/no-distribution rule, in violation of section 8(a)(1). For the reasons stated below, we grant the Board's petition for enforcement.
 
 I.
 
 2
 The facts found by the Administrative Law Judge and adopted by the Board are as follows. Respondent is an Ohio corporation located in Lorain, Ohio, where it is engaged in aluminum processing. Respondent employs up to 14 employees in a variety of jobs ranging from furnace operators to maintenance helpers. Respondent's president is Dean Warner and the plant manager is Kevin Cunningham.
 
 
 3
 In January, 1989, Local Lodge 1802 of the Machinists Union made an unsuccessful attempt to organize respondent's employees. In July, 1989, one of the employees, Larry McCoy, who had supported the earlier union drive, contacted the United Steelworkers of America ("Steelworkers Union"), regarding organizing the employees at respondent's plant. In October, 1989, McCoy obtained union literature from the Steelworkers Union and showed it to at least seven coworkers. McCoy also informed management of his intention to complain to OSHA about safety conditions. After McCoy complained to OSHA, two inspectors visited the plant on October 20, 1989. They ordered respondent to clean up the factory within 30 days or pay a fine. During that time, Plant Manager Cunningham approached McCoy inquiring whether he was "a wise guy by calling OSHA." When McCoy pretended not to know what Cunningham meant, Cunningham said, "You ain't trying to organize a union, huh, huh?" McCoy again said he did not know what Cunningham was talking about. Within days, rumors spread in the plant about a layoff due to a defective fan connected to the furnace. On October 28, 1989, Cunningham told McCoy not to come in on the following Monday and added, "that's what you get for being a wise guy." Joint App. at 99. Two other employees with less seniority than McCoy were also laid off, but two employees with less seniority continued to work. The two laid-off employees with less seniority were ultimately recalled, but McCoy was never recalled. President Dean Warner informed McCoy in late November that he would not be recalled. Cunningham thereafter told McCoy that he would not be recalled because he "was a nuisance." Joint App. at 103. In October, 1990, while McCoy was still laid off, respondent hired a new employee, Jerry Martin.
 
 
 4
 In July, 1990, respondent distributed to its employees a revised set of plant rules. Rule 15 contained a prohibition on solicitation and distribution of literature on company premises during working time without permission from management. This prohibition replaced a no-solicitation/no-distribution rule which had been in force from 1989[1] until July, 1990.
 
 
 5
 McCoy filed charges with the Board on January 26, 1990. The charge was amended on June 29, 1990. Based on the amended charge, a complaint issued on July 26, 1990, alleging that respondent violated section 8(a)(1) and (3) of the Act by threatening an employee with discharge, stating that a layoff was union related, interrogating an employee about union activities, maintaining an unlawful no-solicitation/no-distribution rule, and by terminating employee McCoy because of his union activities. On November 25, 1991, after a hearing, Administrative Law Judge Karl H. Buschmann ("the ALJ") issued a recommendation in which he concluded that respondent violated section 8(a)(1) of the Act by coercively stating that an employee was laid off and would not be recalled because of his protected concerted activities and for publishing and maintaining two unlawfully restrictive no-solicitation/no-distribution rules. The ALJ further held that respondent violated section 8(a)(1) and (3) of the Act by laying off McCoy and failing to recall him because of his protected concerted activities.
 
 
 6
 On August 10, 1992, the Board adopted with modification the findings and conclusions of the ALJ. Contrary to the ALJ, the Board upheld respondent's second no-solicitation/no-distribution rule issued July, 1990. The Board ordered respondent to cease and desist the practices held unlawful by the Board and, inter alia, to reinstate McCoy to the same or substantially similar position without prejudice and with full compensation for lost pay and benefits. On November 2, 1992, the Board petitioned this Court to enforce its Order. On January 6, 1993, respondent cross-petitioned to have the order set aside.
 
 II.
 
 7
 Respondent challenges the Board's conclusion that the discharge and failure to recall McCoy violated section 8(a)(1) and (3) of the Act.[2] Respondent argues that the evidence is insufficient to establish that McCoy engaged in protected activity; that respondent knew of such activity; or that respondent had anti-union animus. Even if these elements were established, respondent argues that it has demonstrated a legitimate business reason for its actions toward McCoy and therefore cannot be held in violation of the Act.
 
 
 8
 In NLRB v. Transportation Management Corp., 462 U.S. 393 (1983), the Supreme Court approved the Wright Line method of analyzing cases involving employment actions motivated by anti-union animus. See Wright Line, A Div. of Wright Line, Inc. and Bernard R. Lamoureaux, 251 N.L.R.B. 1083 (1980), enf'd, NLRB v. Wright Line, 662 F.2d 899 (1st Cir.1981), cert. denied, 455 U.S. 989 (1982). "In a case involving lay-offs, the General Counsel must prove that anti-union animus partially motivated or contributed to the lay-off decision. If this prima facie case is established, then the employer must show by a preponderance of the evidence that the employee[ ] would have been laid-off even if [he] had not engaged in protected activity." Birch Run Welding & Fabricating, Inc. v. NLRB, 761 F.2d 1175, 1179 (6th Cir.1985) (citing Transportation Mgt. Corp., 462 U.S. at 395). Since employer motivation is a factual question, the Board's conclusion concerning motivation must be upheld if supported by substantial evidence on the record considered as a whole. 29 U.S.C. Sec. 160(e); NLRB v. A & T Mfg. Co., 738 F.2d 148, 149 (6th Cir.1984). Improper employer motivation need not be demonstrated by direct evidence but may be inferred from all the circumstances. Birch Run, 761 F.2d at 1179. The Board's inference of improper motivation must be upheld if it is reasonable in light of the proven facts. Id.
 
 
 9
 In the present case, to establish a violation of section 8(a)(3), General Counsel must prove that respondent's discharge and failure to recall McCoy was motivated in part by anti-union animus. This requires a showing that McCoy was in fact engaged in protected activity, that respondent was aware of the activity, and that respondent harbored anti-union animus.
 
 
 10
 We find sufficient evidence in the record that McCoy engaged in protected union activity.[3] McCoy's testimony was uncontroverted that he contacted the Steelworkers Union for literature and union cards, and spoke with other employees about it. In addition, Jim Swartz, a furnace operator, testified that McCoy had given Steelworkers Union literature to him. The ALJ found their testimony credible. Because that finding is not clearly without a rational basis, we will not disturb it. See NLRB v. Valley Plaza, Inc., 715 F.2d 237, 242 (6th Cir.1983) ("[ALJ's] credibility determinations must be accepted unless it is clear that there is no rational basis for them.").
 
 
 11
 The Board based its finding that respondent knew of McCoy's protected activity on the testimony of McCoy, Alan Flanders, and Phil Los. Flanders, respondent's former head of maintenance, testified that McCoy was perceived by respondent to be a union supporter at the time respondent decided not to recall McCoy and that McCoy's union activity was a factor in that decision. The source of Flanders' knowledge, however, was a series of management meetings he attended during the Machinists drive. Those meetings did not indicate any awareness by respondent of the subsequent Steelworkers Union drive let alone McCoy's role in it. Nor is Los' testimony probative of respondent's knowledge. Los, a shift foreman, testified that he knew of McCoy's union activity. The record establishes, however, that Los was part of the labor force rather than management. Therefore, his knowledge cannot be imputed to respondent. McCoy's testimony is probative of respondent's knowledge. McCoy testified that Plant Manager Cunningham said to him, "You ain't trying to organize a union, huh, huh?" This conversation occurred after the McCoy-prompted OSHA inspection and after McCoy's distribution of Steelworkers Union literature. It also took place only eight days before McCoy's lay off.
 
 
 12
 Respondent does not dispute that Cunningham's question, if made, suggests that he knew of McCoy's efforts for the Steelworkers Union. Instead, respondent argues that the testimony is not worthy of belief and that, even if credible, the testimony is insufficient to establish employer knowledge, especially in light of Cunningham's and President Dean Warner's testimony that they had no knowledge of McCoy's union activity with respect to the Steelworkers Union.
 
 
 13
 McCoy's testimony is substantial evidence. Cunningham, who testified, failed to deny that he asked McCoy the question about unionizing. Thus, McCoy's allegation was uncontroverted and the ALJ could find that Cunningham asked the question. Further, it is not unreasonable to infer from Cunningham's question that he believed McCoy was organizing. It would be reasonable to conclude that it is more likely that Cunningham would ask the question if he believed, or at least suspected, union activity than if he did not. We also note the closeness in time (eight days) between Cunningham's questioning and McCoy's lay-off. This fact also could suggest anti-union animus. See Jim Causley Pontiac, A Div. of Jim Causley, Inc. v. NLRB, 620 F.2d 122, 125 (6th Cir.1980) (proximity between protected activity and discharge supports finding of unfair labor practice). We conclude that McCoy's testimony regarding Cunningham's statements to him and the proximity between those statements and McCoy's lay-off, are sufficient to support the Board's finding of employer's knowledge.
 
 
 14
 The third element that General Counsel must prove is respondent's anti-union animus. We find sufficient evidence of such animus. As discussed in part III infra, Cunningham's statements were coercive and the first no-distribution/no-solicitation rule was unlawful. An overly broad no-solicitation rule is evidence of anti-union animus. NLRB v. Vemco, Inc., 989 F.2d 1468, 1477 (6th Cir.), amended on reh'g, 997 F.2d 1149 (6th Cir.1993). We also note Flanders' testimony that Cunningham had expressed "very negative" feelings about unions. Joint App. at 71. We further note McCoy's testimony that Craig James told McCoy that he wouldn't join the Steelworkers Union drive because he had promised respondent that he wouldn't engage in union activities anymore. Joint App. at 93. This evidence is sufficient for the Board's finding of anti-union animus. We conclude that the Board's findings of protected activity, employer knowledge, and anti-union animus are supported by the record as a whole and, therefore, the General Counsel has successfully made out its prima facie case.
 
 
 15
 Respondent argues that even if a prima facie case has been proven, the Board erred by failing to find that respondent would have taken the same actions for legitimate business reasons. The ALJ did not deny that respondent had a legitimate reason for laying employees off but found unlawful the lay off and failure to recall McCoy when employees with less seniority were either not laid off or were recalled. Respondent asserts that McCoy was an undesirable employee who constantly complained and damaged equipment. The ALJ noted, however, various testimony to the effect that McCoy was not especially difficult. Cunningham said that McCoy had an excellent attendance record and "did his job and that was it"; Albert Stanley, a former employee, testified that McCoy "was a good worker ... [who] was there every day"; Flanders described McCoy as "your average worker"; and McCoy testified that Cunningham had praised his work on several occasions. We also note that Flanders, who had been responsible for maintaining equipment and machinery, testified that McCoy was not more abusive to equipment than other employees and that although McCoy complained often about broken equipment, the equipment really was broken. Finally, although respondent explained that it recalled Greg Lovett, a less senior worker than McCoy, because Los requested Lovett, respondent did not explain why it hired Jerry Martin, a completely inexperienced worker instead of McCoy. We find this evidence sufficient to support the Board's conclusion that respondent did not have a legitimate business reason for getting rid of McCoy. We therefore uphold the Board's conclusion that respondent, by terminating and failing to recall McCoy, violated sections 8(a)(3) and 8(a)(1) of the Act.[4]
 
 III.
 
 16
 Respondent also argues that there is insufficient evidence that respondent made coercive statements or had an unlawful no-solicitation/no-distribution rule. The Board concluded that respondent violated section 8(a)(1) by Cunningham's statements to McCoy concerning why he was laid off and would not be recalled as well as Cunningham's question to McCoy concerning whether McCoy was organizing a union. The Board also found that respondent's first policy restricting solicitation and distribution violated section 8(a)(1).
 
 
 17
 We have little difficulty upholding these two violations. Respondent mistakenly argues that General Counsel must prove anti-union animus to establish a violation of section 8(a)(1). If section 8(a)(1) is violated by virtue of a section 8(a)(3) violation, as with McCoy's lay off, proof of unlawful intent is indeed required. To establish a violation of only section 8(a)(1), however, an improper motive need not be proven unless the employer demonstrates an important business justification for the interference. National Cash Register Co. v. NLRB, 466 F.2d 945, 962 (6th Cir.1972), cert. denied, 410 U.S. 966 (1973).
 
 
 18
 With respect to Cunningham's statements, the Board could reasonably find that they were coercive with respect to McCoy's right to engage in protected activity. The question about unionizing and the "nuisance" and "wise guy" statements could reasonably be understood by McCoy and other employees as a threat to those who contemplate organizing. Also, the fact that McCoy responded untruthfully to Cunningham's question supports an inference of coercion.[5] See NLRB v. Garon, 738 F.2d 140, 143 (6th Cir.1984) (employee's untruthful response indicates coercion); NLRB v. Cement Transport, Inc., 490 F.2d 1024, 1028 (6th Cir.), cert. denied, 419 U.S. 828 (1974) (same). Because there was anti-union animus here and, in the alternative, because respondent asserts no legitimate purpose for the statements, the statements violate section 8(a)(1).
 
 
 19
 Turning to respondent's first no-solicitation/no-distribution rule, respondent does not argue that it was not overly broad. Rather, respondent argues that there is no proof of unlawful intent because, contrary to the Board's finding that the rule was adopted at the time of the Steelworkers Union drive, it was adopted a year earlier. Therefore, respondent argues, it is unreasonable to infer that the rule was adopted in order to discourage unionizing.
 
 
 20
 Again, by demanding evidence of improper motive, respondent seems to confuse section 8(a)(3) with section 8(a)(1). The no-solicitation/no-distribution rule at issue, which prohibited solicitation and distribution on company premises even during working hours, is presumptively unlawful. See Great Lakes Steel, A Div. of Nat'l Steel Corp. v. NLRB, 625 F.2d 131, 132 (6th Cir.1980). Therefore, the timing of the rule's adoption does not preclude a section 8(a)(1) violation. The presumption of invalidity "can only be rebutted by evidence of the circumstances necessitating the rule in the interest of plant production and discipline." Id. Respondent offers no overriding interest for the rule and in fact has since changed it. Accordingly, we uphold the Board's finding that the first no-distribution/no-solicitation rule violated section 8(a)(1).
 
 IV.
 
 21
 For the reasons stated above, the Board's petition for enforcement is GRANTED and respondent's cross-petition is DENIED.
 
 
 
 [1]
 Respondent states that this date is incorrect and that the first policy in fact became effective in 1988. Respondent argues that this fact demonstrates that the initial no solicitation/no distribution policy was not implemented to interfere with employee attempts to join the Steelworkers Union
 
 
 [2]
 Sections 8(a)(1) and (3) provide in relevant part:
 (a) It shall be an unfair labor practice for an employer--
 (1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157 of this title;
 ....
 (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....
 29 U.S.C. Sec. 158.
 
 
 [3]
 The ALJ found that McCoy engaged in protected concerted activity by union organizing and by contacting OSHA. The Board, however, expressly declined to rely on McCoy's OSHA complaints
 
 
 [4]
 "Although Secs. 8(a)(1) and (a)(3) are not coterminous, a violation of Sec. 8(a)(3) constitutes a derivative violation of Sec. 8(a)(1)." Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 698 n. 4 (1983)
 
 
 [5]
 According to McCoy's testimony, after Cunningham said, "You ain't trying to organize a union, huh, huh," McCoy responded, "I don't know what you're talking about." Joint App. at 97